# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ASPEN SQUARE, INC.,

    **Plaintiff,**

v.

AMERICAN AUTOMOBILE INSURANCE COMPANY,

    **Defendant.**

Case No. 2:18-CV-02255-JAR-JPO

## MEMORANDUM & ORDER

Plaintiff Aspen Square, Inc. ("Aspen Square") brings this action against Defendant American Automobile Insurance Company ("AAIC") for breach of contract, bad faith, and equitable garnishment to satisfy a judgment entered in Aspen Square's favor against Rainmaker Surveying, Inc. ("Rainmaker Surveying"), a company insured by AAIC. This insurance dispute is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 23) and Defendant's Motion for Summary Judgment (Doc. 21). Aspen Square and AAIC both seek summary judgment on each of Aspen Square's claims. For the reasons discussed in detail below, the Court **denies** Aspen Square's motion and **grants** AAIC's motion.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[12] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II. Uncontroverted Facts

The following material facts are uncontroverted or stipulated to in the parties' Joint Stipulation of Facts.[16]

Dennis Lee Smith is a land surveyor, who at all relevant times did business as Rainmaker Surveying. Defendant AAIC issued professional liability insurance policy number #8 91 MZO 80494814, with a Policy Period from April 15, 2015 to April 15, 2016, and a Retroactive Date of April 15, 2015, to Dennis Lee Smith, PLS d/b/a Rainmaker Surveying (the "Policy").[17] The Policy's Professional Liability coverage provides in relevant part:

---

[11] *Adams*, 233 F.3d at 1246.

[12] Fed. R. Civ. P. 56(c)(4).

[13] *Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[16] Doc. 20.

[17] Doc. 20 ¶ 2; Doc. 20-1.

**Land Surveyors, Civil Engineers and Landscape Architects Professional**
**Liability - 143086 10 09**

THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE REVIEW THE POLICY CAREFULLY. COVERAGE APPLIES ONLY TO A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND REPORTED TO **US** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, DURING THE EXTENDED REPORTING PERIOD, AND IN ACCORDANCE WITH THE REPORTING REQUIREMENTS OF THIS POLICY. **CLAIM EXPENSES** ARE IN ADDITION TO THE LIMIT OF LIABILITY.

* * *

Throughout this Policy the words **You** and **Your** refer to the **Named Insured** stated in the Policy Declarations, and any other person or organization qualifying as a **Named Insured** under this Policy. The words **We**, **Us** and **Our** refer to the Company providing this Policy. Other words and phrases that appear in boldfaced print have special meaning. Refer to Section III, Definitions.[18]

The Policy's Insuring Agreement provides in relevant part:

> I. INSURING AGREEMENT
> A. Coverage
> We will pay those sums the **Insured** becomes legally obligated to pay as **Damages** due to a **Claim** arising from a **Wrongful Act** in the rendering of or the failure to render **Professional Services** or due to a **Pollution Incident** arising from the rendering of or failure to render **Professional Services** to which this insurance applies.
> 1. This coverage applies to **Wrongful Acts** or **Pollution Incidents** taking place during the **Policy Period,** but then only if the **Claim** is first made against the **Insured** and reported to **Us** during the **Policy Period** or **Extended Reporting Period,** if applicable, in accordance with Section VI, Condition N, Reporting of Potential **Claims** and **Actual Claims.**
> 2. This coverage applies to **Wrongful Acts** or **Pollution Incidents** taking place prior to the effective date of this Policy, but after the **Retroactive Date**, if any, stated in the Declarations, provided that
> > a. As of the effective date of this Policy, an **Insured** does not have actual or constructive knowledge of any circumstances, **Wrongful Act** or **Pollution Incident** which could reasonably be expected to result in a **Claim**;
> > b. There is no other valid and collectible insurance available to the

---

[18] Doc. 20 ¶ 4; Doc. 20-1 at 13.

4

> **Insured** for any such **Wrongful Act** or **Pollution Incident**; and
> c. The **Claim** is first made against the **Insured** and reported to Us during the **Policy Period** or **Extended Reporting Period**, if applicable.
> B. Defense, Investigation and Settlement of a **Claim**
> 1. **We** have the right and duty to defend the **Insured** against any **Suit** for which coverage under this Policy applies. However, **We** will have no duty to defend the **Insured** against any **Suit** for which there is no coverage under this Policy. . . .[19]

The Policy's Definitions section provides in relevant part:

> III. DEFINITIONS
> \* \* \*
> B. **Claim** means:
> 1. Any written demand the **Insured** receives for **Damages** due to a **Wrongful Act** or **Pollution Incident** arising out of **Professional Services**, including but not limited to, the institution of arbitration proceedings against the **Insured**;
> 2. Any **Suit** seeking **Damages** against the **Insured** due to a **Wrongful Act** or **Pollution Incident** arising out of **Professional Services**, commenced by the service of a complaint or similar pleading; or
> \* \* \*
> D. **Damages** means compensatory damages, whether part of an award or settlement.…**Damages** shall include attorney's fees of the person or organization bringing the Claim only if such fees are awarded in conjunction with, or are part of a settlement of a Claim covered under this Policy, all costs awarded against the **Insured** in a **Suit**, and prejudgment interest and post judgment interest on that portion of the **Damages We** pay…
> \* \* \*
> K. **Policy Period** means the period of time from the Inception date of this Policy to the Expiration date stated in the Declarations, or, if applicable, any earlier termination date. The **Policy Period** does not include the Extended Reporting Period, if any.
> [ITEM 4. POLICY PERIOD: FROM: 04/15/2015 12:01 A.M. TO: 4/15/2016 12:01 A.M.]
> \* \* \*
> N. **Professional Services** means services rendered by or on behalf of the **Insured** for others in the conduct of the **Named Insured's** profession as a land surveyor, landscape architect, civil engineer, or photogrammetrist. …
> \* \* \*
> P. **Retroactive Date** means
> 1. The date stated under **Retroactive Date** in the Declarations…

---

[19] Doc. 20 ¶ 5; Doc. 20-1 at 13–14.

[ITEM 7. RETROACTIVE DATE: 4-15-2015]
Q. **Suit** means a civil proceeding seeking compensatory monetary damages.
….
\* \* \*

S. **Wrongful Act** means any actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement by the Insured in the rendering of or failure to render **Professional Services**.[20]

The Policy's Conditions section provides in relevant part:

> J. Extended Reporting Periods
> \* \* \*
> 4. Basic Extended Reporting Period
> a. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts at the date of Policy termination or the end of the **Policy Period,** whichever is earlier, and lasts for sixty (60) days.
> b. The Basic Extended Reporting Period applies to **Claims** arising out of a **Wrongful Act** that was committed or **Pollution Incident** that took place during the **Policy Period** or after the **Retroactive Date,** if any, stated in the **Declarations,** and which are first made against the Insured during the **Policy Period** and reported to **Us,** in writing, within sixty (60) days after Policy termination or the end of the **Policy Period,** whichever is earlier.
> \* \* \*
> K. Legal Action Against **Us**
> No one shall sue **Us** unless the following conditions precedent have been met:
> 1. There has been full compliance with all the terms of this Policy; and,
> 2. The amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual and contested trial on the merits, or by written agreement of the **Insured**, the claimant, and **Us**.
> Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this policy.
> \* \* \*
> N. Reporting of Potential **Claims** and Actual **Claims**
> \* \* \*
> 2. Reporting of Actual **Claims**

---

[20] Doc. 20 ¶ 6; Doc. 20-1 at 15–18.

> The **Insured** shall provide notice to **Us** as soon as practicable after a **Claim** is first made against the **Insured**, and in no event after the end of the **Policy Period** or **Extended Reporting Period**, if applicable. This notice shall be deemed sent to **Us** only if it is received by **Us** via facsimile or electronic mail or sent by the **Insured** by prepaid registered or return-receipt-requested mail properly addressed to **Us** at the address shown in or attached to this Policy.[21]

The Policy's 60-day Basic Extended Reporting Period expired on June 15, 2016.

Rainmaker Surveying performed Professional Services for Aspen Square between March 1, 2015 and March 15, 2016, at the Corbin Park Dave & Buster's construction site in Overland Park, Kansas. Rainmaker Surveying was first notified on or after July 21, 2016 that its negligent conduct at the Dave & Buster's worksite damaged Aspen Square and resulted in a claim.

On October 13, 2016, Aspen Square filed a professional negligence claim against Rainmaker Surveying in the lawsuit captioned *Aspen Square, Inc. v. Green Engineering Services, Inc., et al.*, 16CV05664 (the "Underlying Lawsuit"), in the District Court of Johnson County, Kansas, seeking damages for Rainmaker Surveying's negligent conduct at the Dave & Buster's worksite.[22] AAIC first received notice of the Underlying Lawsuit on November 17, 2016 from insurance agent Teresa Foster, who acted on behalf of Rainmaker Surveying. Rainmaker Surveying did not notify or report Aspen Square's professional negligence claim or the Underlying Lawsuit against Rainmaker Surveying to AAIC before November 17, 2016. AAIC denied defense and coverage to Rainmaker Surveying for the Underlying Lawsuit because Aspen Square's claim was not first made and reported before the Policy's Basic Extended Reporting Period expired.[23]

---

[21] Doc. 20 ¶ 7; Doc. 20-1 at 22–24.

[22] Doc. 20-2.

[23] Doc. 20-3.

On September 21, 2017, Aspen Square named Dennis Lee Smith as defendant to the professional negligence claim against Rainmaker Surveying in the Underlying Lawsuit.[24] Rainmaker Surveying provided AAIC with 90 days-notice, certified by mail, of a proposed settlement between Aspen Square and Rainmaker Surveying, and of Rainmaker Surveying's agreement that in the absence of coverage by AAIC it would give Aspen Square a judgment of $127,348.16, plus $20,000 in costs. After AAIC denied coverage to Rainmaker Surveying, Aspen Square and Rainmaker Surveying entered into an agreement whereby Rainmaker Surveying agreed to give Aspen Square the $127,348.16 judgment, assigned any claims against AAIC under the Policy, and limited Aspen Square's recovery of the judgment to AAIC. On February 14, 2018, an Agreed and Stipulated Judgment was entered in Aspen Square's favor and against Rainmaker Surveying in the Underlying Lawsuit, awarding Aspen Square $127,348.16, plus $20,000 in costs.[25] Aspen Square is Rainmaker Surveying's assignee and the judgment creditor of the judgment against Rainmaker Surveying in the Underlying Lawsuit.

## III. Discussion

Aspen Square and AAIC dispute the nature of the Policy and whether the Policy covers Aspen Square's claim against Rainmaker Surveying. Aspen Square argues that the Policy should be construed as an occurrence policy, and that summary judgment should be awarded in its favor because AAIC wrongfully denied coverage of Aspen Square's claim against Rainmaker Surveying. By contrast, AAIC argues that the Policy is a claims made policy, and that summary judgment should be awarded in its favor because the Policy did not cover Aspen Square's claim against Rainmaker Surveying. As explained below, the Court finds that the Policy is a claims

---

[24] Doc. 20-4.
[25] Doc. 20-5.

made policy. Accordingly, the Court grants summary judgment in favor of AAIC and denies Aspen Square's motion for summary judgment.

The parties agree that Missouri law applies to this coverage dispute. The interpretation of an insurance policy is a question of law.[26] Under Missouri law, "[i]nsurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage."[27] When interpreting insurance policy provisions under Missouri law, the court must give the language "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance[.]"[28] "[T]he words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties."[29] "Exceptions and limitations contained in insurance policies should be construed strictly against the insurer."[30]

"Absent an ambiguity, an insurance policy must be enforced according to its terms."[31] "[A]mbiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy."[32] Any ambiguity must be resolved in favor of the insured.[33] "Courts will not create an ambiguity in order to distort the language of an unambiguous

---

[26] *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. 2015) (en banc) (citing *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. 2014) (en banc)).

[27] *Country Mut. Ins. Co. v. Cronin*, 17 F. Supp. 3d 900, 905 (E.D. Mo. 2014) (quoting *Nixon v. Life Investors Ins. Co. of Am.*, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984)).

[28] *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.2d 129, 132 (Mo. 2007) (en banc); *see also Haulers Ins. Co. v. Wyatt*, 172 S.W.3d 880, 884 (Mo. Ct. App. 2005) (quoting *Tapley v. Shelter Ins. Co.*, 91 S.W.3d 755, 757 (Mo. Ct. App. 2002)).

[29] *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995) (quoting *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. Ct. App. 1993)).

[30] *Id.* (quoting *Chase Resorts, Inc.*, 869 S.W.2d at 150).

[31] *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 830 (Mo. Ct. App. 1998) (citing *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (en banc)).

[32] *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.*, 852 S.W.2d 396, 399 (Mo. Ct. App. 1993) (citing *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. 1992) (en banc)).

[33] *Seeck*, 212 S.W.3d at 132 (en banc).

insurance policy."[34] Moreover, "[m]ere disagreement by the parties regarding a contract term's interpretation does not render the term ambiguous."[35]

### A. Interpreting the Policy

The dispositive question in this case is whether the Policy is a claims made or an occurrence policy. Under Missouri law, "a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred."[36] "Claims made policies place special reliance on notice,"[37] and thus under a claims made policy, "if there is no timely notice, there is no coverage."[38] By contrast, an occurrence policy "generally provide[s] for coverage for an event that occurs during the policy period, regardless of when a claim is asserted."[39] "[C]overage is triggered by negligent acts or omissions that occur during the policy, irrespective of when the acts or omissions are discovered and reported to the insurer."[40] Thus, "[t]he basic distinction between claims made and occurrence policies is that while the occurrence policy is triggered by the insured's liability-producing conduct, the claims made policy is triggered by the presentation of a claim."[41] In

---

[34] *Krombach*, 827 S.W.2d at 210 (citing *Rodriguez v. Gen. Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. 1991) (en banc)).

[35] *Lindsay v. Safeco Ins. Co.*, 463 F.3d 827, 832 (8th Cir. 2006).

[36] *Wittner, Proger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*, 969 S.W.2d 749, 754 (Mo. 1998) (en banc) (internal quotation marks omitted); *see also Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634 (8th Cir. 1996).

[37] *Landry v. Intermed Ins. Co.*, 292 S.W.3d 352, 356 (Mo. Ct. App. 2009).

[38] *Lexington Ins. Co.*, 88 F.3d at 634.

[39] *H&R Block, Inc. v. Am. Int'l Specialty Ins. Co.*, 546 F.3d 937, 939 (8th Cir. 2008) (quoting *Wittner*, 969 S.W.2d at 952)).

[40] *Landry*, 292 S.W.3d at 356 (citing *Continental Cas. Co v. Maxwell*, 799 S.W.2d 882, 886 (Mo. Ct. App. 1990)).

[41] *Continental Cas. Co.*, 799 S.W.2d at 886 (citation omitted).

*Landry*, the Court of Appeals for the Western District of Missouri explained that a claims made policy emphasizes notice:

> Notice must be given to the insurer during the policy period. If the insured does not give notice within the contractually required policy period, there is simply no coverage under a claims made policy, whether or not the insurer was prejudiced. This is because the event which invokes coverage in a claims made policy is transmittal of notice of the claim to the insurer. "The very essence of a claims made policy is notice to the carrier within the policy period."[42]

"[C]overage under most claims made policies is triggered when a *negligent act or omission* is discovered and reported to the insured during the policy period."[43] As this extends coverage to lawsuits brought after a policy expires "so long as the insured provides *notice* to the insured during the policy period of *potential claims*," a claims made policy offers the insured additional protection for claims not in litigation before the expiration of the policy.[44] Thus, the insured is responsible for reporting acts and occurrences that could become claims in accordance with the notice requirement that "sets the parameters of coverage under the policy."[45]

Here, neither AAIC nor Aspen Square allege that the Policy is ambiguous or unenforceable. Specifically, neither party argues that the coverage provision is ambiguous. The Policy's coverage provision states:

> 1. This coverage applies to **Wrongful Acts** or **Pollution Incidents** taking place during the **Policy Period,** but then only if the **Claim** is first made against the **Insured** and reported to **Us** during the **Policy Period** or **Extended Reporting Period,** if applicable, in accordance with Section VI, Condition N, Reporting of Potential **Claims** and **Actual Claims.**[46]

---

[42] *Landry*, 292 S.W.3d at 356 (citing and quoting *Continental Cas. Co.*, 799 S.W.2d at 886–87).

[43] *Id.* (citing *Continental Cas. Co.*, 799 S.W. 2d at 886).

[44] *Id.* (citing *F.D.I.C. v. St. Paul Fire & Marine, Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993).

[45] *Id.* (citing *F.D.I.C.*, 993 F.2d at 158).

[46] Doc. 20 ¶ 5.

The Court finds that the Policy is unambiguous, and therefore enforces it according to its terms.

The parties disagree about the interpretation of the Policy. The Court finds that, as a matter of law, the Policy is a claims made policy. The language of the Policy makes this clear with the statement:

> THIS IS A CLAIMS-MADE AND REPORTED POLICY, PLEASE REVIEW THE POLICY CAREFULLY. COVERAGE APPLIES ONLY TO A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND REPORTED TO **[THE INSURER]** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, DURING THE EXTENDED REPORTING PERIOD[.][47]

Moreover, pursuant to the Policy, (1) the "coverage applies to Wrongful Acts or Pollution Incidents taking place during the Policy Period, but then only if the Claim is first made against the Insured and reported to Us during the Policy Period or Extended Reporting Period;"[48] (2) the Policy Period was from April 15, 2015 through April 15, 2016; (3) the Extended Reporting Period lasted until June 15, 2016—"sixty (60) days after Policy termination or the end of the Policy Period;"[49] and a claim is defined as "[1] Any written demand the **Insured** receives for **Damages** due to a **Wrongful Act** or **Pollution Incident** arising out of **Professional Services** [or 2] [a]ny **Suit** seeing Damages against **Insured** due to a **Wrongful Act** or **Pollution Incident** arising out of **Professional Services**, commenced by the service of a complaint or similar pleading . . . ."[50]

While Aspen Square asserts that the Policy is an occurrence policy because Rainmaker's "liability-inducing conduct" triggered the Policy, this is contrary to the unambiguous language of

---

[47] *Id.* ¶ 4.
[48] *Id.* ¶ 5.
[49] *Id.* ¶ 7.
[50] *Id.* ¶ 6.

12

the Policy. The Policy explicitly states that it is a "claims-made and reported policy" and specifically explains that "coverage applies only to a claim first made against the insured and reported to [the insurer] during the policy period . . . ." Moreover, under a reasonable reading of the unambiguous language of the Policy, coverage is triggered not merely by the liability-inducing act occurring between April 15, 2015 and April 15, 2016, but by the claim being made and reported by June 15, 2016. Thus, not only must the liability-inducing conduct occur during the Policy Period, but the claim—which the Policy defines as distinct from the conduct itself—must be made and reported to AAIC before the end of the Basic Extended Reporting Period. Aspen Square has not pointed to any language demonstrating that the Policy does not function as a claims made policy, and there is no language in the Policy indicating that notice of a liability-inducing occurrence alone determines whether a claim is covered. Indeed, the Policy's coverage is triggered by a claim—defined as either a written demand to the insured for damages or a suit seeking damages against the insured—being made and reported to AAIC. Accordingly, the Policy is not only titled as, but also functions as a claims made policy.

Aspen Square further argues that the Policy acts as an occurrence policy because AAIC cannot show that the Policy provided for "retroactive 'claims-made' liability during the policy period."[51] Aspen Square appears to rely on a New Jersey case quoted in *Continental Casualty Co. v. Maxwell*[52] for this proposition. In *Zuckerman v. National Union Fire Insurance Co.*, the New Jersey Supreme Court discussed whether insurance companies must prove prejudice to avoid coverage in a claims made policy when the claim is reported after the policy expires, and explained that "[i]n exchange for limiting coverage only to claims made during the policy period,

---

[51] Doc. 24 at 10.

[52] 799 S.W.2d 882 (Mo. Ct. App. 1990).

13

the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period."[53]

However, while retroactive coverage for liabilities arising before a policy period began often exist in claims made policies, this Court has found no Missouri law to support Aspen Square's notion that a claims made policy *must* contain a retroactive clause that effectively covers claims for liabilities that arose before a policy's effective date. To the contrary, a claims made policy with limited retroactive coverage, or with a retroactive date that is the same as a policy's commencement date, is enforceable.[54] In fact, "[i]t is commonplace for issuers of claims-made policies to limit retroactive coverage by specifying a cut-off date, such as the date of the first claims-made policy issued by the insurer to this insured, so that claims based on occurrences before that date are excluded from coverage; for protection against old occurrences, the insured must look to his occurrence policies."[55] Retroactive dates benefit insurers because insurers limit their liability exposure "by inserting a 'retroactive date' into the policy, prior to which the insured's act are not covered."[56] Therefore, the absence of retroactive coverage is not fatal to the determination that the Policy is a claims made policy.

---

[53] 495 A.2d 395, 406 (N.J. 1958).

[54] *See, e.g.*, *H&R Block, Inc. v. Am. Int'l Specialty Ins. Co.*, 546 F.3d 937, 942 (8th Cir. 2008) (quotation omitted) ("Even a claims made policy with *no* prior acts coverage is not illusory, that is, 'hopelessly or deceptively one-sided,' 'if the insurance premium were correspondingly small.'"); *Edwards v. Lexington Ins. Co.*, 507 F.3d 35, 41 (1st Cir. 2007) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 35 (1st Cir. 2007)) (finding that a claims made policy without retroactive coverage was unambiguous and enforceable, and noting that "a claims-made insurance policy is not rendered ambiguous simply because it does not resemble all policies in its class"); *Truck Ins. Exchange v. Ashland Oil, Inc.*, 951 F.2d 787, 790 (7th Cir. 1992) (citing *Nat'l Cycle, Inc. v. Savoy Reinsurance Co.*, 938 F.2d 61, 62 (7th Cir. 1991)).

[55] *Edwards*, 507 F.3d 35, 41 (1st Cir. 2007) (quoting *Ashland Oil, Inc.*, 951 F.2d at 790); *see also* 7 Steven Plitt et al., Couch on Ins. § 126:26 (3d ed. 2018) (citation omitted).

[56] *Capson Physicians Ins. Co. v. MMIC Ins. Inc.*, 829 F.3d 951, 953 n.2 (8th Cir. 2016) (quoting 3 New Appleman on Insurance Law Library Edition § 16.07[5][a] (Jeffrey E. Thomas & Francis J. Mootz III eds., LexisNexis 2015)).

**B.     Coverage of Aspen Square's Claim Against Rainmaker Surveying**

As a matter of law, the Policy is a claims made policy—specifically a claims made and reported policy. Accordingly, AAIC was not required to provide coverage for a claim against Rainmaker Surveying if it was not made and reported to AAIC by the end of the Basic Extended Reporting Period.

AAIC denied defense and coverage to Rainmaker Surveying for the Underlying Lawsuit because Aspen Square's claim was not first made and reported before the Policy's Basic Extended Reporting Period expired. It is undisputed that the claim was not reported to AAIC until November 17, 2016—over five months after June 15, 2016, the Basic Extended Reporting Period's expiration date. Rainmaker Surveying was first notified on or after July 21, 2016 that its negligent conduct damaged Aspen Square and resulted in a claim. On October 13, 2016, Aspen Square filed a professional negligence claim against Rainmaker Surveying in the Underlying Lawsuit, seeking damages Rainmaker Surveying's negligent conduct at the Corbin Park Dave & Buster's worksite in Overland Park, Kansas. AAIC first received notice of the Underlying Lawsuit on November 17, 2016 from insurance agent Teresa Foster, on behalf of Rainmaker Surveying, and it is undisputed that Rainmaker Surveying did not report Aspen Square's professional negligence claim or the Underlying Lawsuit to AAIC before November 17, 2016. Therefore, as matter of law, the Policy does not cover Aspen Square's claim against Rainmaker Surveying.

**C.     Prejudice**

Pursuant to Missouri Insurance Department regulations, an insurer must show prejudice when denying defense and coverage of a claim based on untimely written notice.[57] An insurer is

---

[57] Mo. Code Regs. Ann. tit. 20, § 100-1.020 (2007) ("No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time following any loss, unless this failure

only required to prove prejudice, however, when the coverage at issue is in an occurrence policy.[58] Federal and state courts applying Missouri law "have long held that Missouri law does not require an insurer to show prejudice under a claims made policy."[59] "Because the reporting requirement helps define the scope of coverage under a claims made policy, to excuse a delay in notice beyond the policy period would alter a basic term of the insurance contract."[60] As the Policy is a claims made policy, AAIC is not required to prove prejudice to deny coverage of the claim. Accordingly, AAIC rightfully denied the claim against Rainmaker Surveying in accordance with the Policy, and the Court grants summary judgment in favor of AAIC on each of Aspen Square's claims, as explained below.

### D. Summary Judgment on Aspen Square's Claims

As Rainmaker Surveying's judgment creditor, Aspen Square stands in the shoes of Rainmaker Surveying—the insured-debtor—and has no greater rights than Rainmaker

---

operates to prejudice the rights of the insurer."); *see also Tuterri's Inc. v. Hartford Steam Boiler Inspection and Ins. Co.*, 894 S.W.2d 266, 268–69 (Mo. Ct. App. 1995) (discussing the prejudice requirement and refusing to enforce a written notice of claims provision in an insurance contract when the insurer could not prove that untimely notice resulted in actual prejudice); *Weaver v. State Farm Mut. Auto Ins. Co.*, 936 S.W.2d 818, 820–21 (Mo. 1997) (en banc).

[58] *See, e.g.*, *Ins. Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 597 (Mo. Ct. App. 1996) (citations omitted) (discussing the differences between occurrence and claims made policies, and finding that because the policy at issue was a claims made policy, the insurer was not required to "prove it was prejudiced to avoid coverage due to lack of notice[.]"); *Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634 (8th Cir. 1996) (citations omitted) ("The Missouri Courts of Appeals [have held] that an insurer need not prove prejudice to avoid coverage under a claims made policy if the claim was not reported until after the policy expired); *Philadelphia Consol. Holding Corp. v. LSi-Lowery Sys. Inc.*, No. 4:12CV1005 CDP, 2013 WL 5567719, at *5 (E.D. Mo. Oct. 9, 2013) (citations omitted) ("Defendants also cite Missouri regulation 20 CSR 100–1.020, which states: 'No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time following any loss, unless this failure operates to prejudice the rights of the insurer.' However, this exact argument has been considered and rejected by the Eighth Circuit in *Lexington Ins. Co. v. St. Louis Univ.* . . . and I find no reason to depart from that holding here.").

[59] *See Ins. Placements, Inc.*, 917 S.W.2d at 597; *Lexington Ins. Co.*, 88 F.3d at 634; *Philadelphia Consol. Holding Corp.*, 2013 WL 5567719, at *5.

[60] *Ins. Placements, Inc.*, 917 S.W.2d at 597 (citations omitted).

Surveying.[61] Aspen Square brings breach of contract, bad faith and equitable garnishment claims against AAIC, and seeks summary judgment in its favor on all three claims. AAIC asserts that because the Policy is a claims made policy, it appropriately denied coverage of the claim arising from Rainmaker Surveying's wrongful conduct, and therefore is entitled to summary judgment on Aspen Square's claims. The determination that the Policy is a claims made and reported Policy is dispositive, and AAIC is entitled to summary judgment on all three claims.

### 1. Breach of Contract

Aspen Square asserts a breach of contract claim based on AAIC denying coverage of its claim against Rainmaker Surveying. Under Missouri law, an action for breach of contract requires "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff."[62] Because the Policy is a claims made policy and did not cover Rainmaker's liability, AAIC did not breach a contract by denying coverage of the claim as a matter of law.[63] Accordingly, AAIC is entitled to summary judgment on the breach of contract claim.

---

[61] *Meyers v. Smith*, 375 S.W.2d 9, 15 (Mo. 1964) (citation omitted) ("[I]n an action by the injured party against the insurer, after a judgment has been obtained by the injured party against the insured, the injured party stands in the shoes of the insured and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer, if the insured had paid the judgment to the injured party.").

[62] *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (citing *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. Ct. App. 1997)).

[63] *See id.*

## 2. Bad Faith

Aspen Square alleges that AAIC "has no good faith basis for denying coverage and has acted in bad faith in denying Aspen's claim against Rainmaker."[64] AAIC argues that Aspen Square cannot succeed on its bad faith claim because it cannot prove the Policy covers the claim against Rainmaker Surveying. The Court finds that, as a matter of law, Aspen Square's bad faith claim fails.

Under Missouri law, derivative theories of liability such as bad faith claims fail as a matter of law when there is no coverage under the insurance policy at issue.[65] Here, the Policy does not cover the claim against Rainmaker Surveying because the Policy is a claims made policy, and the claim was not made and reported before the expiration of the Policy's Basic Extended Reporting Period. Accordingly, Aspen Square's derivative bad faith claim fails as a matter of law, and summary judgment is granted in favor of AAIC.

Additionally, the record does not support the requirements for bad faith refusal to settle. Under Missouri law, bad faith refusal to settle an action only exists when a liability insurer "(1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy."[66] Here, AAIC

---

[64] Doc. 1-2 ¶ 34.

[65] *Stone v. Farm Bureau Town & Country Ins. Co. of Mo.*, 203 S.W.3d 736, 749 (Mo. Ct. App. 2006) (determining that because the insurance policy was cancelled, the derivative theories of liability failed because the policy did not provide coverage); *Columbia Mut. Ins. Co. v. Epstein*, 200 S.W.3d 547, 551–52 (Mo. Ct. App. 2006) (finding that if the insurer did not have a duty to defend and indemnify, "it would obviously preclude" the insured's bad faith counterclaim); *Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, No. 4:15 CV 1171 CDP, 2016 WL 4990498, at *5 (E.D. Mo. Sept. 6, 2016) (citing *Purscell v. TICO Ins. Co.*, 959 F. Supp. 2d 1195, 1200–01 (W.D. Mo. 2013)) (granting summary judgment "because there was no coverage under the Policy, [defendant] cannot be found to have acted in bad faith in failing to settle the claim").

[66] *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 827 (Mo. 2014) (en banc) (citing *Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750, 753 (Mo. 1950)).

denied defense and coverage to Rainmaker Surveying for the Underlying Lawsuit because Aspen Square's claim was not first made and reported before the expiration of the Policy's Basic Extended Reporting Period. Therefore, AAIC did not reserve the exclusive right to contest or settle the Underlying Lawsuit. Moreover, the Record shows that AAIC did not prevent Rainmaker Surveying from voluntarily assuming liability or settling the claims of the Underlying Lawsuit without its consent, as demonstrated by Rainmaker Surveying's settlement agreement with Aspen Square and the Agreed and Stipulated Judgment.

### 3. Equitable Garnishment

Lastly, Aspen Square asserts a claim for equitable garnishment based on its judgment against Rainmaker Surveying and AAIC's alleged obligation under the Policy to cover the claim against Rainmaker Surveying. However, the Court finds that, as a matter of law, AAIC is not obligated to pay the judgment and grants AAIC summary judgment on the equitable garnishment claim.

"An equitable garnishment action is 'a suit in equity against the insurance company to seek satisfaction of one's judgment under an insurance policy.'"[67] To recover for equitable garnishment, a plaintiff "must prove that he obtained a judgment in his favor against the insurance company's insured, the policy was in effect when the incident occurred and that the injury is covered by the insurance policy."[68] Here, the claim against AAIC fails the third prong. Although it is undisputed that Aspen Square obtained a judgment against Rainmaker Surveying, AAIC's insured, and that the Policy was in effect when Rainmaker Surveying's wrongful conduct occurred, the Policy does not cover Aspen Square's claim against Rainmaker Surveying.

---

[67] *McDonald v. Ins. Co. of Pa.*, 460 S.W.3d 58, 67 (Mo. Ct. App. 2015) (quoting *Little v. Am. States Ins. Co.*, 179 S.W.3d 433, 432 n.2 (Mo. Ct. App. 2005)).

[68] *Id.* (quoting *Kotini v. Century Sur. Co.*, 411 S.W.3d 374, 377 (Mo. Ct. App. 2013)).

As previously discussed, the Policy is a claims made and reported policy, and the claim was not made and reported to AAIC until after the Basic Extended Reporting Policy expired. Thus, the Policy does not cover the claim. Accordingly, Aspen Square cannot garnish the Policy as a matter of law, and AAIC is entitled to summary judgment on Aspen Square's equitable garnishment claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Aspen Square's Motion for Summary Judgment (Doc. 23) is **denied** and that AAIC's Motion for Summary Judgment (Doc. 21) is **granted**. Plaintiff's case is dismissed in its entirety.

**IT IS SO ORDERED.**

Dated: March 11, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
